IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-614-D

DENISE PAYNE, and NATIONAL )
ALLIANCE FOR ACCESSIBILITY, INC., )
               )
      Plaintiffs, )
                )
    v.            )    **ORDER**
                )
SEARS, ROEBUCK AND CO.,     )
                )
      Defendant. )

On November 1, 2011, National Alliance for Accessibility, Inc., ("National Alliance") and Denise Payne ("Payne") (collectively, "plaintiffs") filed suit under Title III of the Americans with Disabilities Act ("ADA Title III"), 42 U.S.C. §§ 12181–12189 [D.E. 1]. On November 3, 2011, plaintiffs filed an amended complaint, in which they name Sears, Roebuck and Co. ("Sears" or "defendant") as defendant and seek injunctive relief [D.E. 5]. On December 13, 2011, Sears moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) [D.E. 9]. Sears argues that plaintiffs lack standing, depriving this court of subject-matter jurisdiction over plaintiffs' claims [D.E. 10]. On January 3, 2012, plaintiffs responded in opposition [D.E. 13]. On January 20, 2012, Sears replied [D.E. 14]. As explained below, the court grants Sears's motion to dismiss.

I.

Payne is a Florida resident. Pls.' Mem. Opp'n Mot. Dismiss [D.E. 13], Ex. 1 ("Payne Aff.") ¶ 2. Payne has cerebral palsy, which prevents her from walking and limits her use of her hands. Id. ¶ 1; Am. Compl. [D.E. 5] ¶ 5. Payne ambulates by using an electric wheelchair. Payne Aff. ¶ 1; Am.

Compl. ¶ 5. National Alliance is a non-profit corporation based in Ft. Lauderdale, Florida, which works to ensure that "places of public accommodation are accessible to and usable by the disabled . . . ." Am. Compl. ¶ 13; see id. ¶ 1; Payne Aff. ¶ 4. Payne is a founder of National Alliance. Payne Aff. ¶ 4; Am. Compl. ¶ 6. When plaintiffs filed their amended complaint, three North Carolina residents were members of National Alliance. Am. Compl. ¶ 6.

Payne has "traveled to North Carolina approximately [nine] times in recent years." Payne Aff. ¶ 3; see Am. Compl. ¶ 6. Payne made these trips because she has "business associates, friends, and continuing connections in North Carolina." Payne Aff. ¶ 3. Specifically, Payne traveled to North Carolina to establish National Alliance chapters in Raleigh and Asheville, id. ¶ 4; Am. Compl. ¶ 6, to visit her attorney's office, located in Winston-Salem, Am. Compl. ¶ 12, and to visit the Richard Petty NASCAR museum (to which Payne has an annual pass) in Randleman, id. ¶ 10. Payne also travels throughout the country to visit ADA-covered establishments and test ADA compliance. Payne Aff. ¶ 7.

In the amended complaint, plaintiffs describe three of Payne's recent North Carolina visits. In June 2010, Payne traveled to the Cary, North Carolina area to attend a business meeting. Am. Compl. ¶ 7. After the meeting, on June 12, 2010, Payne visited Sears's store located at 1105 Walnut Street, Cary, North Carolina 27511 (the "store"). Id. ¶¶ 7, 14. The store is a "public accommodation" under the ADA. See id. ¶ 14; see also 42 U.S.C. § 12181(7)(E); 28 C.F.R. §§ 36.201(a), 36.104. Plaintiffs allege that Payne discovered various ADA violations in the store's interior space and restrooms. Am. Compl. ¶ 16. Plaintiffs suggest that a more thorough inspection of the store would reveal additional violations. Id. ¶ 17. Payne next visited North Carolina in July 2010 when she drove through the state while traveling to and returning from a retreat held in Radford, Virginia. Id. ¶ 8. Plaintiffs allege that during this trip, Payne "met[] with business

2

contacts" in North Carolina. Id. However, plaintiffs do not allege that Payne visited the store or even ventured close to Cary while traveling between Florida and Radford, Virginia. See id. Finally, Payne visited North Carolina in October 2011, flying in to and out of Raleigh-Durham International Airport. Id. ¶ 9. During her trip, Payne attended business meetings in Raleigh, met with her attorney in Winston-Salem, visited the Richard Petty NASCAR Museum in Randleman, and attended a business meeting in Wilmington. Id. ¶¶ 9–10. On October 22, 2011, Payne returned to the store, where "Payne encountered the same architectural barriers that she faced during her June 12, 2010 visit." Id. ¶ 11.

Plaintiffs allege that Sears "has discriminated against . . . [p]laintiffs by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of [the ADA]." Id. ¶ 18. Plaintiffs further claim that Sears's failure to voluntarily remedy the alleged ADA violations constitutes continuing discrimination. Id. Plaintiffs ask the court to issue an injunction requiring Sears to remedy the alleged ADA violations. Id. ¶¶ 20–22, (b); see 42 U.S.C. § 12188(a)(2); see also 28 C.F.R. §§ 36.304(a), 36.402(a), 36.401(a). In support, plaintiffs affirm that they "are without adequate remedy at law and are suffering irreparable harm." Am. Compl. ¶ 19. Plaintiffs also ask the court to render a declaratory judgment that Sears "at the commencement of the subject lawsuit is in violation of [the ADA]." Id. ¶ (a). Finally, plaintiffs ask the court to award them "attorney's fees, costs[,] and litigation expenses." Id. ¶ (c); see 42 U.S.C. § 12205.

Sears moves to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). Def.'s Mot. Dismiss [D.E. 9]. Sears argues that plaintiffs have not alleged an "injury in fact" and therefore plaintiffs do not have Article III standing to assert their claims. See Def.'s Mem. Supp. Mot. Dismiss [D.E. 10] 2–6.

## II.

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted). A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). When considering a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings without converting the proceeding into one for summary judgment." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005) (quotation omitted); Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (quotation omitted). Plaintiffs bear the burden of establishing that this court has subject-matter jurisdiction over their claims. See, e.g., Steel Co., 523 U.S. at 104; Evans, 166 F.3d at 647; Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). However, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject[-]matter jurisdiction, the . . . court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged [in the complaint and any additional materials]." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009).

Individual and organizational plaintiffs must establish Article III standing. White Tail, 413 F.3d at 458. A plaintiff does so by showing: (1) that the plaintiff has "'suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;'" (2) "'a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;'" and (3) that it is "'likely, as opposed to merely speculative, that the injury will be redressed by a

4

favorable decision'" from the court. Chambers Med. Techs. of S.C., Inc. v. Bryant, 52 F.3d 1252, 1265 (4th Cir. 1995) (alterations omitted) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). These requirements are "the irreducible constitutional minimum of standing." Lujan, 504 U.S. at 560. If a plaintiff does not have standing, the court does not have subject-matter jurisdiction to hear the plaintiff's claims. See, e.g., id. at 560–61; White Tail, 413 F.3d at 459.

The first element requires a plaintiff to "demonstrate an 'injury in fact' that is concrete and particularized, and actual or imminent, as opposed to conjectural or hypothetical." Long Term Care Partners, LLC v. United States, 516 F.3d 225, 231 (4th Cir. 2008). When a plaintiff seeks injunctive relief, the alleged injury in fact must be more than past exposure to illegal conduct. See, e.g., Lujan, 504 U.S. at 564; City of Los Angeles v. Lyons, 461 U.S. 95, 102–06 (1983); Suhre v. Haywood Cnty., 131 F.3d 1083, 1090–91 (4th Cir. 1997). Instead, the plaintiff must show a "real or immediate threat that [she] will be wronged again." Lyons, 461 U.S. at 111; see O'Shea v. Littleton, 414 U.S. 488, 502 (1974) ("likelihood of substantial and immediate irreparable injury"). This requirement applies to plaintiffs seeking injunctive relief under the ADA. See, e.g., Chapman v. Pier 1 Imports (U.S.), Inc., 631 F.3d 939, 948–49 (9th Cir. 2011) (en banc); Shotz v. Cates, 256 F.3d 1077, 1081–82 (11th Cir. 2001); Harty v. Luihn Four, Inc., 747 F. Supp. 2d 547, 551–52 (E.D.N.C. 2010), aff'd, 453 F. App'x 347 (4th Cir. 2011) (per curiam) (unpublished); Tyler v. Kan. Lottery, 14 F. Supp. 2d 1220, 1224–25 (D. Kan. 1998); Aikins v. St. Helena Hosp., 843 F. Supp. 1329, 1333–34 (N.D. Cal. 1994). A plaintiff's mere intent to return to the place where the alleged injury first occurred "'some day[,]' . . . without any description of concrete plans, . . . do[es] not support a finding of the 'actual or imminent' injury that [Article III] require[s]." Lujan, 504 U.S. at 564; see Lyons, 461 U.S. at 101–07.

A.

Courts consider four factors to determine whether an individual ADA Title III plaintiff has demonstrated a "real and immediate threat of future harm" and thus satisfied the first requirement for Article III standing—an alleged injury in fact. These factors are: (1) the proximity of the plaintiff's residence to the alleged offending establishment; (2) the plaintiff's past patronage of the establishment; (3) the definitiveness of the plaintiff's plan to return to the establishment; and (4) whether the plaintiff frequently travels nearby. See, e.g., Nat'l Alliance for Accessibility v. Waffle House, Inc. (Waffle House I), No. 5:10-CV-375-FL, 2011 WL 2580679, at *2 (E.D.N.C. June 29, 2011) (unpublished); Norkunas v. Park Road Shopping Ctr., Inc., 777 F. Supp. 2d 998, 1002 (W.D.N.C. 2011); Harty, 747 F. Supp. 2d at 552; but cf. Daniels v. Arcade, L.P., No. 11-1191, 2012 WL 1406299, at *3 (4th Cir. Apr. 24, 2012) ("We decline at this time to endorse the four-factor test . . . ."). The court examines each factor seriatim.

As for the first factor, Payne lives in Broward County, Florida. See Payne Aff. ¶¶ 2, 6. Payne's home is approximately 805 miles from the store. Def.'s Mem. Supp. Mot. Dismiss 7; see id. Ex. 1 ("Map to Store from Broward County"). Sears suggests that this significant distance establishes that the store "is not a local or neighborhood retail establishment that Payne will ever visit with any regularity." Id. 7. Thus, the first factor weighs against Payne having standing. See Nat'l Alliance for Accessibility, Inc. v. Waffle House, Inc. (Waffle House II), No. 5:10-CV-385, 2011 WL 4544017, at *3 (E.D.N.C. Sept. 29, 2011) (unpublished) (plaintiff lacked standing where, among other factors, she lived "nearly 800 miles from defendant's restaurant"); Nat'l Alliance for Accessibility Inc. v. Rite Aid of N.C., Inc., No. 1:10-CV-932, 2011 WL 4499294, at *5 (M.D.N.C. Sept. 27, 2011) (unpublished) (plaintiff lacked standing where, among other factors, plaintiff's Florida home and defendants' Chapel Hill, North Carolina store were "hundreds of miles away from

6

each other"); Waffle House I, 2011 WL 2580679, at *2 (plaintiff lacked standing where, among other factors, she lived 700 miles from defendant's restaurant); Norkunas, 777 F. Supp. at 1002 ("[T]he distance of 120 miles between [p]laintiff's residence and the [alleged offending establishment] is too great for the Court to consider it likely that [p]laintiff will have occasion to return to [d]efendant's establishment . . . ."); cf. Jones v. Sears Roebuck & Co., No. 2:05-cv-0535-MCE-KJM, 2006 WL 3437905, at *3 (E.D. Cal. Nov. 29, 2006) (unpublished) ("Courts have consistently maintained that a distance over 100 miles weighs against finding a reasonable likelihood of future harm."). Moreover, plaintiffs do not suggest that anything about the store makes individuals like Payne, who live hundreds of miles from it, likely to patronize it. Cf. Nat'l Alliance for Accessibility, Inc. v. Triad Hospitality Corp., No. 1:11-CV-527, 2012 WL 996661, at *6 (M.D.N.C. Mar. 23, 2012) (unpublished) ("[W]hen the place of business is a hotel . . . the proximity factor is less important." (citation omitted)).

Plaintiffs concede that the first factor does not support Payne's standing. See Pls.' Mem. Opp'n Mot. Dismiss 8, 10. However, plaintiffs argue that their showings as to the other factors compensate for their failure as to this factor. Id. 10; see Harty v. Burlington Coat Factory of Pa., Civil Action No. 11-01923, 2011 WL 2415169, at *7 (E.D. Pa. June 16, 2011) (unpublished).

As for the second factor, Payne has patronized the store twice. See Am. Compl. ¶¶ 7, 11; Payne Aff. ¶ 8. Plaintiffs argue that Payne's having visited the store twice before plaintiffs filed the complaint distinguishes this case from other cases where a plaintiff lacked standing after visiting an alleged offending establishment only once. Pls.' Mem. Opp'n Mot. Dismiss 2–4, 11; see Rite Aid, 2011 WL 4499294, at *6 ("Courts in the Fourth Circuit have recognized that a single visit to a property does not support a finding of an injury-in-fact."); see also Waffle House II, 2011 WL

7

4544017, at *3 ("[Plaintiff] states that she visited the restaurant on one occasion in 2010.").[1]

Some courts in other circuits have held that when an ADA Title III plaintiff visits an establishment more than once before suing, then the plaintiff has Article III standing. See, e.g., Wilson, 563 F.3d at 980 (two previous visits); Abercrombie & Fitch, 767 F. Supp. 2d at 517 (three visits in the six months before filing the complaint); Absecon Hospitality, 2006 WL 3109966, at *6 (two visits in the two years before filing the complaint). However, at least one court has declined to treat this factor as requiring a rote quantitative analysis, asking instead whether a plaintiff's patronage suggests that the plaintiff "prefers" the alleged offending establishment. Wilson v. Costco Wholesale Corp., 426 F. Supp. 2d 1115, 1122 (S.D. Cal. 2006).

The court adopts the latter analysis. One previous visit is insufficient to establish standing because a plaintiff who has visited a public accommodation only once is unlikely to return. See Rite Aid, 2011 WL 4499294, at *6 (collecting cases). However, a pre-filing second visit does not necessarily make a post-filing return likely. In fact, the opposite may be true. ADA Title III plaintiffs, aware that a single visit to an establishment weighs against their having standing, are likely to visit the establishment twice before suing its owner, thus intentionally avoiding the single-visit

---

[1] Plaintiffs also appear to suggest that Payne's having visited the store on two occasions obviates the applicability of the four-factor test. See Pls.' Mem. Opp'n Mot. Dismiss 3, 11–12. Plaintiffs reason that the four-factor test is intended to determine whether an ADA Title III plaintiff will "be injured a second time in the future." Id. 3. Plaintiffs note that "Payne has already suffered her second injury . . . ." Id. (emphasis removed). Thus, according to plaintiffs, "[t]his actual subsequent injury takes all of the guesswork out of the analysis of 'will the plaintiff suffer subsequent injury' by showing that in fact she already has." Id. 11. Despite plaintiffs' argument, courts frequently apply the four-factor test even if a plaintiff alleges more than one visit. See, e.g., Equal Rights Ctr. v. Abercrombie & Fitch Co., 767 F. Supp. 2d 510, 516–17 (D. Md. 2010); Wilson v. Kayo Oil Co., 535 F. Supp. 2d 1063, 1066–70 (S.D. Cal. 2007), rev'd on other grounds, 563 F.3d 979 (9th Cir. 2009) (per curiam); Access 4 All, Inc. v. Absecon Hospitality Corp., Civil Action No. 04-6060 (JEI), 2006 WL 3109966, at *6–7 (D.N.J. Oct. 30, 2006) (unpublished). Moreover, adopting plaintiffs' argument would effectively render the second factor dispositive, regardless of any other facts.

8

rule. Such litigation gamesmanship says nothing about a plaintiff's likelihood of suffering future injury. In contrast, when a plaintiff's patronage suggests that he or she prefers an establishment, it is likely that he or she will return to that establishment in the future. Here, Payne's two visits during the seventeen months before plaintiffs filed the complaint does not suggest that she prefers the store or faces a real and immediate threat of future harm.

As for the third factor, Payne does not have definite plans to return to the store. "[W]hile [a] [p]laintiff may not need to identify a specific date on which he plans to return to the [establishment], he must have a non-speculative intent to return that amounts to more than an allegation that he will return 'some day.'" Norkunas, 777 F. Supp. 2d at 1002; see Rite Aid, 2011 WL 4499294, at *6 (collecting cases). Additionally, "[w]hether a plaintiff has standing is determined by considering the relevant facts as they existed at the time the action was commenced." Republic Bank & Trust Co. v. Kucan, 245 F. App'x 308, 310 (4th Cir. 2007) (per curiam) (unpublished); see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180 (2000). Accordingly, the court must consider whether, at the time that plaintiffs filed their complaint, Payne had a non-speculative intent to return to the store.

In opposition to Sears's motion to dismiss, Payne states that "[s]ince filing this lawsuit, [she has] planned a trip to North Carolina for April of 2012." Payne Aff. ¶ 10. During her April 2012 trip, Payne intends "to make the short drive [from the locations of her various business engagements] to [the] store to shop there." Id. Plaintiffs argue that Payne's planned April 2012 trip makes this case indistinguishable from Harty v. Waffle House, No. 7:11-CV-138-D, [D.E. 17] (E.D.N.C. Sept. 30, 2011). See Pls.' Mem. Opp'n Mot. Dismiss 2–4. In Harty, this court held that a plaintiff bringing a claim under the ADA had established standing despite living far from the defendant's Wilmington, North Carolina restaurant because the plaintiff stated in an affidavit that he intended

9

to return to the restaurant during two upcoming trips to Wilmington. No. 7:11-CV-138-D, [D.E. 17] at 1–2. However, Payne's affidavit statement is distinguishable from the one at issue in Harty. In Harty, the plaintiff's statement suggested that he had made his plans to return to Wilmington and to the restaurant before filing his complaint. See id., [D.E. 15] ¶¶ 9, 11. Here, Payne admits that she formed her travel plans only after plaintiffs filed the complaint. See Payne Aff. ¶ 10. Accordingly, plaintiffs contend that Payne has standing based on a fact that did not exist when they filed the complaint. See Pls.' Mem. Supp. Mot. Dismiss 2–4, 13. Because the court must assess Payne's standing based only on facts that existed when plaintiffs filed the complaint, see Republic Bank & Trust, 245 F. App'x at 310, the court declines to consider Payne's planned April 2012 trip in evaluating the definitiveness of her plans to return to the store. See Def.'s Reply [D.E. 14] 3–4.

Instead, the court assesses the definitiveness of Payne's plans to return to the store as those plans existed when plaintiffs filed the amended complaint. In the amended complaint, plaintiffs allege that "Payne intends to continue to travel to the Cary area and to patronize [the] store, unless the architectural barriers prevent her from doing so." Am. Compl. ¶ 12. However, plaintiffs also state that they "are aware that it would be a futile gesture to attempt to visit [the store] if they wish to do so free of discrimination." Id. ¶ 13.

A plaintiff's professed desire to return to an establishment at some unstated future time is insufficient to establish standing. See, e.g., Waffle House II, 2011 WL 4544017, at *3 (collecting cases). Moreover, plaintiffs' doubts about their being able to effectively shop at the store without encountering structural impediments makes it further unlikely that, when plaintiffs filed the complaint, Payne would return to the store. See Norkunas, 777 F. Supp. 2d at 1002. Accordingly, Payne does not have definite or concrete plans to return to the store. Thus, the third factor counsels against finding standing.

10

As for the fourth factor, plaintiffs' allegation that Payne frequently travels to North Carolina does not suggest an injury in fact. In considering the fourth factor, courts have asked whether a plaintiff's past travel to an area, by itself, makes it likely that the plaintiff will suffer future harm during a return to the area. See, e.g., Waffle House II, 2011 WL 4544017, at *2–3; Norkunas, 777 F. Supp. 2d at 1002–03. "[A] plaintiff's general travel to a state does not support a finding that said plaintiff has demonstrated a threat of future harm related to a specific establishment within the state." Rite Aid, 2011 WL 4499294, at *9; see Norkunas, 777 F. Supp. 2d at 1002–03 & n.4; Nat'l Alliance for Accessibility, Inc. v. Tunnel Road (E & A) Ltd. Liability Co., No. 1:10cv282, 2011 WL 1791293, at *3 (W.D.N.C. Apr. 8, 2011) (unpublished), M&R adopted, 2011 WL 1789958 (W.D.N.C. May 10, 2011) (unpublished). For example, in Norkunas, although the court accepted as true plaintiff's claim that he "travel[s] through the Charlotte metropolitan area . . . three to four times per year," the court found that this fact did not give plaintiff standing when plaintiff had "little conceivable reason to leave the immediate I-77/I-485 corridors, and no reason at all to drive the distance between the interstate highway and the [establishment] in the course of his travels." 777 F. Supp. 2d at 1002.

Payne asserts that she has visited North Carolina "approximately [nine] times in recent years." Payne Aff. ¶ 3. While plaintiffs' amended complaint describes only three of those visits (one of which merely involved Payne's passing through North Carolina en route to and returning from Virginia), see Am. Compl. ¶¶ 7–11, the court accepts as true Payne's claim of having made approximately six additional visits to the state in "recent years." See Kerns, 585 F.3d at 193. However, Payne's reasons for previously visiting North Carolina, and the reasons that plaintiffs allege will draw her back, do not make it likely that Payne will again be injured at the store. Plaintiffs cite various reasons for Payne's past and future travels to North Carolina, including: (1) meeting with Payne's attorney in Winston-Salem, see Am. Compl. ¶¶ 10, 12; (2) visiting the Richard

11

Petty NASCAR Museum in Randleman, see id. ¶ 10; (3) attending meetings in Raleigh, Asheville, and Wilmington in furtherance of Payne's efforts to establish National Alliance chapters in those cities, see id. ¶¶ 6, 10, 12; and (4) meeting with other "business associates and friends[.]" See id. ¶ 6.[2] However, Winston-Salem is approximately 100 miles from the store, see Def.'s Mem. Supp. Mot. Dismiss, Ex. 2 ("Map to Store from Winston-Salem"); Randleman is approximately 90 miles from the store, see id., Ex. 3 ("Map to Store from Randleman"); Wilmington is approximately 138 miles from the store, see id., Ex. 4 ("Map to Store from Wilmington"); and Asheville is approximately 250 miles from the greater Raleigh area. See Waffle House II, 2011 WL 4544017, at *1. Because these cities are not proximately located to the store, Payne's future travel to them does not make it likely that she will return to the store and there suffer harm. See Triad Hospitality, 2012 WL 996661, at *7; Rite Aid, 2011 4499294, at *9.

Although plaintiffs allege that Payne has traveled and will travel to the greater Raleigh area, these allegations do not move the fourth factor into plaintiffs' column. First, there is "little conceivable reason" that Payne will return to the store during one of her visits to the greater Raleigh area, aside from plaintiffs' "naked and self-serving assertion" that Payne would like to do so. See Norkunas, 777 F. Supp. 2d at 1002–03. Second, plaintiffs do not allege how often Payne travels to the greater Raleigh area, and their failure to do so prevents the court from finding that they have satisfied the fourth factor. See Triad Hospitality, 2012 WL 996661, at *7. Accordingly, the fourth factor does not suggest that Payne has alleged an injury in fact.

---

[2] Plaintiffs do not allege that Payne is working to establish a National Alliance chapter in Cary; however, they allege that Payne's efforts to establish chapters in other North Carolina cities will cause her to have future business meetings in Cary. See Am. Compl. ¶ 12.

12

In sum, the relevant factors indicate that Payne has not shown a "real or immediate threat that [she] will be wronged again." Lyons, 461 U.S. at 111. Thus, for the purposes of seeking an injunction under ADA Title III, Payne has not alleged an injury in fact and does not have Article III standing.

B.

In opposition to the conclusion that plaintiffs lack standing, plaintiffs argue that the court should not use the four-factor test to determine whether Payne has standing because the four-factor test is "entirely inconsistent with [c]ongressional intent." See Pls.' Mem. Opp'n Mot. Dismiss 18–27. Plaintiffs offer three reasons to support their argument, but none are pervasive.

First, plaintiffs argue that the "[b]roadest [i]nterpretation [o]f [Article III] [s]tanding" is necessary to advance the ADA's remedial purpose. Id. 18–20. Plaintiffs argue that Congress intended for private enforcement actions like this one to be the main tool for ensuring ADA compliance. Id. 18–19. Thus, they contend that applying Article III standing requirements and dismissing ADA Title III actions defeats the ADA's purpose. Id. Plaintiffs primarily rely on Betancourt v. Ingram Park Mall, L.P., 735 F. Supp. 2d 587 (W.D. Tex. 2010), in making this argument. In Betancourt, the district court, influenced heavily by academic literature, determined that the ADA confers on litigants the broadest standing permissible under Article III. Id. at 601–02. Thus, the court held that Article III standing is not confined to ADA Title III plaintiffs who aver a concrete and definite plan to return to an alleged offending establishment. Id. Instead, "in an ADA Title III case, the risk of injury in fact is not speculative so long as the alleged discriminatory barriers remain in place, the plaintiff remains disabled, and the plaintiff is 'able and ready' to visit the facility once it is made compliant." Id. at 604.
13

The Norkunas court noted its reservations concerning the Betancourt court's broad standing analysis. Norkunas, 777 F. Supp. 2d at 1004 & n.5. Nonetheless, the Norkunas court found Betancourt distinguishable. Id. at 1004–05. The court determined that plaintiff, a Florida resident who made only occasional visits to the Charlotte area was not "'able and ready' to visit the [establishment] once it [was] made ADA-compliant . . . ." Id. at 1004. Similarly, as discussed, Payne is not "able and ready" to return to the store once Sears makes the store ADA-complaint. Thus, even under Betancourt, Payne does not have standing.

Next, plaintiffs argue that use of the four-factor test violates the Commerce Clause. See Pls.' Mem. Opp'n Mot. Dismiss 20–22. Plaintiffs suggest that the court's standing analysis confers standing on plaintiffs who live in the same state as an alleged offending establishment, but deprives standing from residents of different states. Id. 21. Plaintiffs conclude that "[b]ecause the ADA is premised on Congress'[s] authority to regulate interstate commerce, it makes no sense to favor the rights of the purely intrastate traveler over the rights of the interstate traveler." Id.

Other courts have considered and rejected plaintiffs' argument. See, e.g., Access for the Disabled, Inc. v. Karan Krishna, LLC, No. 5:10-CV-123-WW, 2011 WL 846854, at *4 (E.D.N.C. Mar. 8, 2011) (unpublished), aff'd, 453 F. App'x 419 (4th Cir. 2011) (per curiam) (unpublished); Harty, 747 F. Supp. 2d at 552–53. In Harty, the court held that "[h]owever broad [Congress's] Commerce power may be, it is clear that Congress cannot use its Commerce power to abridge the constitutionally required elements of Article III." 747 F. Supp. 2d at 553.

Plaintiffs' argument also misunderstands the Commerce Clause. Plaintiffs suggest that the court's standing analysis impedes plaintiffs' rights to interstate travel. Pls.' Mem. Opp'n Mot. Dismiss 21 ("As the [standing test] is applied, a disabled person's rights to legal recourse diminish with each [s]tate line he must cross."). Although each plaintiff has a right to interstate travel, "[t]hat

14

right does not derive from the . . . Commerce Clause, or else it could be eliminated by Congress." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 277 n.7 (1993). To the extent that plaintiffs contend that the court's standing analysis infringes on their rights to interstate travel, that argument fails. The right to interstate travel "require[s] that all citizens be free to travel throughout the . . . land uninhibited by statutes, rules, or regulations which unreasonably burden that movement." Shapiro v. Thompson, 394 U.S. 618, 629 (1969), overruled in part on other grounds by Edelman v. Jordan, 415 U.S. 651, 671 (1974). The court's Article III standing analysis does not "unreasonably burden" plaintiffs' abilities to travel across state lines. Moreover, because plaintiffs have not alleged an injury in fact, they do not have standing to assert a violation of their interstate travel rights.

Finally, plaintiffs argue that Payne's role as "a civil rights advocate for the disabled [who] monitors compliance of places of public accommodation with the ADA[]" gives her "tester standing." Pls.' Mem. Opp'n Mot. Dismiss 22–27. Plaintiffs rely on a case in which the Supreme Court held that the Fair Housing Act of 1968 ("FHA"), 42 U.S.C. § 3604, conferred standing on a "tester" "who ha[d] been the object of a misrepresentation made unlawful under [the FHA]" even when the tester had "approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home . . . ." Havens Realty Corp. v. Coleman, 455 U.S. 363, 373–74 (1982). In Havens Realty, the Court held that the plaintiffs' receipt of the false information was an injury in fact. Id. at 374. The Tenth Circuit applied Havens Realty in the ADA context, holding that a plaintiff suing under ADA Title II to enjoin a city transit system's alleged discriminatory practices had Article III standing even though the plaintiff had stated that he intended to use the transit system "several times per year" for the sole purpose of testing the system's ADA compliance. Tandy v. City of Wichita, 380 F.3d 1277, 1285–1288 (10th Cir. 2004) (quotation

15

omitted). Plaintiffs also cite cases in which district courts have held that ADA Title III plaintiffs have standing even when their reasons for returning to an establishment are, at least in part, to test the establishment's ADA compliance. Pls.' Mem. Opp'n Mot. Dismiss 24; see Betancourt, 735 F. Supp. 2d at 604–05; Bruni v. FMCO, L.L.C., No. 2:06-cv-293-FtM-29SPC, 2007 WL 853513, at *3 (M.D. Fla. Mar. 16, 2007) (unpublished); Bruni v. Fine Furniture by Gordon's, Inc., No. 2:06-cv-456-FtM-29DNF, 2007 WL 28341, at *3 (M.D. Fla. Jan. 3, 2007) (unpublished).[3]

To the extent that plaintiffs contend that Payne's work as an ADA tester gives her standing when an otherwise similarly situated individual who is not a professional advocate for disabled persons' civil rights would not have standing, this argument fails. The ADA Title III cases that plaintiffs rely on do not support this proposition. In those cases, the courts held that a plaintiff's status as an ADA tester did not deprive the plaintiff of Article III standing when the four-factor test indicated that the plaintiff had alleged an injury in fact. See Betancourt, 735 F. Supp. 2d at 604 ("[T]he fact that a disabled person in a Title III case is a tester does not change the analysis or outcome."); FMCO, 2007 WL 853513, at *3; Fine Furniture, 2007 WL 283431, at *3. Plaintiffs do not cite and research has not produced a case where a court held that an ADA Title III plaintiff's tester status affirmatively satisfied Article III. See Betancourt, 735 F. Supp. 2d at 604–05; Norkunas, 777 F. Supp. 2d at 1005.

---

[3] Some of plaintiffs' case citations are not accurate. Plaintiffs quote from Maloney v. City of Marietta, 822 F.2d 1023 (11th Cir. 1987), and cite Maloney as if it was an ADA Title III case. See Pls.' Mem. Opp'n Mot. Dismiss 24. However, the Maloney court considered a Voting Rights Act plaintiff's Article III standing. 822 F.2d at 1024. Plaintiffs also cite the district court's analysis in Norkunas v. Seahorse NB, LLC, 720 F. Supp. 2d 1313 (M.D. Fla. 2010). See Pls.' Mem. Opp'n Mot. Dismiss 24. In Seahorse, the district court held that "[p]laintiff's capacity as a tester, in and of itself, does not warrant dismissal for lack of subject matter jurisdiction." 720 F. Supp. 2d at 1316. However, the Eleventh Circuit has since reviewed Seahorse and held that plaintiff's non-litigation-related reason for returning to the establishment obviated the court's needing to address tester standing. 444 F. App'x 412, 415 n.3 (11th Cir. 2011) (per curiam) (unpublished).

16

To the extent that plaintiffs argue that Payne's status as an ADA tester does not, by itself, deprive her of standing, this argument is irrelevant. Because Payne has not alleged an injury in fact, the court need not consider whether her tester status withdraws standing from her. See Norkunas, 777 F. Supp. 2d at 1005.

Finally, National Alliance "relies solely on its associational standing rights to bring a claim." Def.'s Mem. Supp. Mot. Dismiss 10. Organizational plaintiffs may establish "associational standing" to bring suit on behalf of its members when: "(1) its members would otherwise have standing to sue as individuals; (2) the interests at stake are germane to the group's purpose; and (3) neither the claim made nor the relief requested requires the participation of individual members in the suit." White Tail, 413 F.3d at 458 (quotation omitted); Friends for Ferrell Parkway, LLC v. Stasko, 282 F.3d 315, 320 (4th Cir. 2002).

National Alliance has not shown that one of its members would otherwise have standing to sue as an individual. See, e.g., White Tail, 413 F.3d at 458; Waffle House I, 2011 WL 2580679, at *3. Payne, who does not have standing, is the only National Alliance member identified in the amended complaint. See Am. Compl. Thus, National Alliance fails to meet the first element required for associational standing. See, e.g., Triad Hospitality, 2012 WL 996661, at *8; Waffle House II, 2011 WL 4544017, at *3; Waffle House I, 2011 WL 2580679, at *3. Accordingly, National Alliance lacks standing and the court dismisses its claims for lack of subject-matter jurisdiction.

III.

In sum, plaintiffs have not alleged facts that establish Article III standing. Accordingly, the court does not have subject-matter jurisdiction over plaintiffs' claims and GRANTS Sears's motion to dismiss [D.E. 9].

17

SO ORDERED. This 31 day of May 2012.

                                            JAMES C. DEVER III
                                            Chief United States District Judge